51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Trina L. HARRIS, Defendant-Appellee.
 No. 94-5426.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1995.
Decided March 30, 1995.
 
 ARGUED: Stephen Urban Baer, Assistant United States Attorney, Charlottesville, VA, for appellant. Shanon Stephanie Echols, Charlottesville, VA, for appellee. ON BRIEF: Robert P. Crouch, Jr., United States Attorney, Charlottesville, VA, for appellee.
 Before HALL and LUTTIG, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The government appeals the sentence imposed on Trina Harris for her conviction on one count of conspiracy to launder drug money. We hold that the district court erred in departing downward from the guidelines range, and we vacate the sentence and remand for resentencing.
 
 
 2
 * James Dailey and Reginald Davis came to the Roanoke area in 1989 from New Jersey and established independent drug distribution networks that they merged in early 1990. Several persons were involved in laundering money earned from the drug operation but were not directly involved in the actual distribution of drugs. Della Ferguson and Vera Ann Stuart, relatives of one of the distributors, used fictitious names to wire money on several occasions; Ferguson also titled four cars in her name in furtherance of the laundering scheme. When Ferguson and Stuart received target letters and subpoenas from the grand jury in April, 1993, each cooperated and provided what the government felt was "substantial assistance." Each pleaded guilty to a single money laundering count. The district court granted the government's motion under USSG Sec. 5K1.1 for a departure below Ferguson's guidelines range of 24-30 months, and she was sentenced to one year probation. The information against Stuart was dismissed on the government's motion, and she was permitted to enter the pretrial diversion program.
 
 
 3
 One of Davis's girlfriends, Kandys Taylor, was involved in two wire transfers of money from the drug trade. She also titled in her name a car purchased with drug profits. She pleaded guilty to one money laundering count and was sentenced to twenty-four months imprisonment.
 
 
 4
 Harris, who lived in New Jersey, was one of Dailey's girlfriends. At Dailey's request, she went to the Western Union office in Paterson, New Jersey, to pick up money orders on ten occasions over a twenty-month period. The total value of the money orders was approximately $35,000. She used her own name each time she signed for a money order, and she received no compensation for her trouble. Although she was not involved in the actual distribution of drugs, she was aware of her boyfriend's involvement.
 
 
 5
 In accordance with a plea agreement, Harris pleaded guilty to a single conspiracy count[1] in March 1994, and a substantive money laundering count was dismissed. She had no prior criminal record, and her sentencing range was determined to be 21-27 months.[2] At the sentencing hearing, Harris's lawyer asked for a sentence at the low end of the range. The court, on its own, pointed out that Ferguson and Stuart, each of whom had received no prison time, were essentially in the same position as Harris except for the provision of substantial assistance. Harris had never been given the opportunity to provide assistance to the government. Like Stuart, Harris was a first time offender who had a steady job. The court departed downward because "the appearance of justice would be very much enhanced by being evenhanded in these sentences." Harris received a six-month sentence, with credit for the six months she had spent in jail to that point, plus two years supervised release.
 
 
 6
 In its motion for reconsideration, the government contended that Harris's circumstances were more akin to those of Taylor than to those of the cooperating defendants Stuart and Ferguson. The government noted that Harris never attempted to cooperate and that she only decided to plead guilty on the morning of the day scheduled for her trial. The district court denied the motion without a hearing. After noting that Taylor's sentence was out of proportion to Ferguson's and Stuart's sentences, the court explained its decision to depart in Harris's case:
 
 
 7
 Although Trina L. Harris did not cooperate with the government, as did Stuart and Ferguson, that should not be the sole criterion for determining the appropriate punishment. As was stated in open court, the purpose of the guidelines is to promote fairness in sentencing in the eyes of the public and when sentences are imposed for the same type of act which are greatly disproportionate, then the purpose of the guidelines is defeated.
 
 
 8
 United States v. Harris, 93-CR-186-3 (W.D.Va. June 9, 1994) (order). The government appeals the sentence under 18 U.S.C. Sec. 3742(b).
 
 II
 18 U.S.C. Sec. 3553(b) provides that
 
 9
 [t]he court shall impose a sentence[within the applicable guideline range] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines that should result in a sentence different from that described. (emphasis added)
 
 
 10
 In other words, the court can only go outside the applicable sentencing range for a reason that the Guidelines drafters failed to adequately take into account.
 
 
 11
 The Guidelines do provide for departures in certain limited circumstances, the most prominent of which is "substantial assistance." See USSG Sec. 5K1.1. Although USSG Ch.5, Pt.H lists several offender characteristics that are "not ordinarily relevant" to departure decisions, such as age (Sec. 5H1.2) or employment record (Sec. 5H1.5), the drafters recognized that the circumstances warranting departure under Sec. 5K2.0, i.e. those factors not adequately considered by the Commission, could not, "by their very nature, be comprehensively listed and analyzed in advance." Sec. 5K2.0, p.s. The threshold issue presented by this appeal is whether a disparity of sentences among similarly situated defendants might justify a departure on the ground that one of the Guidelines' purposes is to "promote fairness in the eyes of the public."
 
 
 12
 The test for determining whether a departure is permitted is simply stated: (1) Was the particular circumstance (the basis for the proposed departure) not adequately taken into consideration by the Guidelines (a legal question); (2) If it was not, is the circumstance supported by the facts of the case (a factual question); (3) If there is adequate factual support, is such circumstance of "of sufficient importance in the case that a sentence outside the Guidelines should result". United States v. Hummer, 916 F.2d 186, 192 (4th Cir.1990), cert. denied, 499 U.S. 970 (1991). Although the government offers arguments on the first two prongs, we are satisfied that this case can be resolved on the first one alone.
 
 
 13
 We have previously encountered departures based on disparity of sentences among codefendants, though the underlying rationales for the departures are slightly different. In United States v. Ellis, 975 F.2d 1061 (4th Cir.1992), cert. denied, 113 S.Ct. 1352 (1993), the district court departed downward after finding that the sentencing disparity was caused by charging decisions. We held that such a departure was invalid absent proof of actual prosecutorial misconduct. In United States v. Hall, 977 F.2d 861, 864 (4th Cir.1992), we affirmed the district court's refusal to depart downward on the basis of codefendant sentence disparity. In "reject[ing] sentencing disparity as a basis for departure when confronted with disparate sentences among both codefendants and coconspirators ...," we focused on the Guidelines' goal of nationwide uniformity, rather than uniformity within the "microcosm" of a single group of codefendants. Id. at 864 and n. 4. Harris's reliance on the district court's "public perception of fairness" rationale cannot finesse the clear dictates of Ellis and Hall.
 
 
 14
 Harris argues that the reasons for the departure given by the district court were certainly "reasonable" and that 18 U.S.C. Sec. 3742(e)(3), which is the statute guiding our review of this case, permits a sentence outside the guideline range to be set aside on appeal only if "unreasonable."[3] Under our test for reviewing departures, however, the first step is de novo examination of the "specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors 'not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' 18 U.S.C. Sec. 3553(b)." Hummer, 916 F.2d at 192. If the departure was made for an invalid reason, the "reasonableness" analysis is at an end. As discussed above, the reasons for the departure cited by the court in Harris's case are factors "adequately taken into consideration" by the Sentencing Commission.
 
 VACATED AND REMANDED FOR RESENTENCING
 
 
 [1]
 18 U.S.C. Sec. 1956(g)
 
 
 [2]
 Harris's presentence report contained the following calculations:
 -Base offense level (USSG Sec. 2S1.1(a)(2)) .......... 20
-Specific offense characteristic (Sec. 2S1.1(b)(1)) ... 3
-Role in offense (Sec. 3B1.2(a)) ...................... 4
-Acceptance of responsibility (Sec. 3E1.1(a)) ......... 3
 Total offense level ....................... 16
 
 
 [3]
 18 U.S.C. Sec. 3742(e)(3) provides that, "[u]pon review of the record, the court of appeals shall determine whether the sentence ... is outside of the applicable guideline range, and is unreasonable, having regard for--(1) the factors to be considered in imposing a sentence ... and (2) the reasons for the imposition of the particular sentence...."